Good morning, counsel. I don't see, is the government attorney here? Yes, your honor, I'm here. I'm appearing by video. Okay, thank you. All right, you may proceed, Mr. Phillips. Good morning, your honors, and may it please the court, David Phillips, on behalf of Petitioner Segundo Rodriguez-Lara. I'll aim to reserve three minutes for rebuttal, and I'll keep an eye on my time. In December 2023, Mr. Rodriguez-Lara underwent brutal sexual torture at the hands of the Nicaraguan police. He was taken to a dark room, stripped naked, and sexually and physically assaulted for eight hours by five police officers. During his expedited removal proceedings, embarrassment and an understandable fear of law enforcement officers led Mr. Rodriguez-Lara to clam up. He told the asylum officer and the immigration judge about his improper arrest, but he did not disclose the details about his prolonged sexual and physical assault. This court now has those details, and the immigration judge should hear them too. The court should therefore remand for the immigration judge to decide whether to receive Mr. Rodriguez-Lara's full account of his arrest in December 2023. This court has the inherent authority to remand, even in immigration cases, and remand is especially appropriate here, both because the full account of Mr. Rodriguez-Lara's assault is so plainly material to his claims for relief, and also because his delay in providing that account is excusable due to his trauma. If the court remands, it should also correct two errors in the immigration judge's analysis. First, the immigration judge improperly disregarded the fact that Mr. Rodriguez-Lara was targeted based on his political neutrality, which is a protected ground. Second, the immigration judge erred in finding, quote, no evidence that the individuals following Mr. Rodriguez-Lara actually work for the government. And finally, if the court does not remand, it should at least stay issuance of the mandate to allow Mr. Rodriguez-Lara to seek reopening himself before the immigration judge. Just on that last point, he has — he is no longer in the United States, right? That's right, Judge. So what does staying the mandate do? So staying the mandate preserves this court's stay of removal, and even though Mr. Rodriguez-Lara has departed for Nicaragua, under the ICE directive, ICE policy directive 11061, the government has a policy of facilitating the return of noncitizens who have departed from the United States if their presence is necessary to continue with their request for relief in the proceedings before an immigration judge. And so if Mr. Rodriguez-Lara is able to successfully receive reopening, either through a remand from this court or by moving for reopening himself, under that ICE directive, under that ICE policy, there's a chance that he may be able to return to litigate his request for relief, and a stay of removal will be in effect at that point. But I guess if he — suppose he files a motion to reopen, and suppose it's granted, and the proceedings are reopened, or I suppose if we were to remand. As I understood the directive, like once the proceedings are reopened, if his presence is necessary, he would then be returned. But that doesn't have anything to do with whether we've issued the mandate or not, does it? My point is that if he does return under the ICE policy directive at that point, and he's participating in those proceedings, there's nothing preventing the government from then removing him because there will be no stay of removal in place. But if this court stays the mandate such that the stay of removal that is currently in place continues in place, my client will have the protection of that order while he returns, and once he's returned and he is litigating those removal proceedings. Okay. Moving forward. I'd like to begin first with remand. As the Second Circuit explained in Lynn versus Department of Justice, Congress has placed review of immigration petitions in the hands of courts with equity powers, and those powers do include the ability to remand cases for further proceedings without deciding the merits. So Lynn involved a, I mean, the new evidence there was evidence of an official Chinese policy. You know, we have a case subsequent to that, Shen, that treated a similar policy as sort of a judicially noticeable change in foreign law. So, I mean, I dissented in Shen, but that's our treatment of that issue. I guess I don't see how either of those, though, gets you a remand for the consideration of new facts that are, you know, clearly facts specific to this petitioner that are not part of the administrative record. So what's the authority supporting the proposition that that sort of course is appropriate? Well, I think the foundation of the court's inherent authority that the Second Circuit described in Lynn is broader than just for, you know, new documentary evidence of that nature about country conditions. So, you know, as the Supreme Court put it in the Ford case, which is the case that the Second Circuit relied on in Lynn for laying out where this inherent authority comes from, courts have inherent authority to remand for further proceedings where justice demands that course in order that some defect in the record may be supplied. So I think the authority is equitable and this court can remand for consideration of new facts. I would also point the court to this court's decision in Melgar-Alas v. Garland, which we lay out on page 14 of our supplemental opening brief. So in Melgar-Alas, the court remanded a petition for review to the BIA so that the BIA could consider a recent en banc decision from this court, but the panel also ordered that the BIA could determine whether to return the matter to the immigration judge to further consider the petitioner's CAT claim and new evidence. I don't think that new evidence was of the type considered in Lynn. So I do think that the ability to remand for remedy defects in the record does apply to new facts. It's a question for the immigration judge in the first instance whether to accept those facts. Is this a strategic decision to pursue the petition for review instead of making a motion to reopen? I mean, your client has not made a motion to reopen based on these facts, right? That's correct. And the answer is, it was not a strategic decision for my client because my client was not aware that a motion to reopen was available to him. The record shows that- Pro bono then, right? I'm sorry? Was he pro bono with his first- He was proceeding pro se in his expedited- Right, pro se. You're pro bono. I'm sorry. That's right. He was proceeding pro se in his expedited removal proceedings, and what he was told was that there was no administrative review available of the immigration judge's decision, and that his next recourse was to come to this court. So he took those instructions at face value, he came to this court, he filed a timely petition for review, and in his pro se opening brief, he then disclosed the full account of his torture in December of 2023. And so it's not gamesmanship on my client's part. He came to the tribunal that was the next stop for him, as he'd been told. And his reticence to disclose that to law enforcement officers is understandable, and I want to hit that point. So the court can grant this relief to Mr. Rodriguez-Lara in light of its inherent authority. It should grant this relief to Mr. Rodriguez-Lara, first because the full account of his torture at the hands of the police is so clearly material to his claim on the merits. And then- I'm wondering if we could do a limited remand to allow him to file a motion to reopen before the immigration court. Because we have now this account, it hasn't been tested. And so, and we can't take new evidence. And on the record that's actually before us, I don't think we would be able to grant the petition based on this record. So if we were to do a limited remand to have the evidence taken and tested, and then have the case come back to us, I'm just throwing that out there. That is essentially what my client is asking for, Judge Wardlaw, is my client is not, and I want to be clear, my client is not asking for this court to go ahead and receive the new evidence that he inserted in his pro se opening brief, and then decide the petition for review on that basis. He wants to present that evidence to the proper decision maker in the first instance, which is the immigration judge. So that is essentially what my client is asking for, is a limited remand. And if we, if you don't get a remand, and he goes and files a motion to reopen, would that be time barred at this point? Or what would happen if he filed a motion to reopen? So under this court's precedence, non-citizens who are in expedited removal proceedings, like my client, are able to request both normal reopening under the regulations, and also sua sponte reopening. Under normal reopening, the time has elapsed, but there are equitable tolling arguments available to him, and he can press those. And the same applies for sua sponte reopening. There is no time limit for sua sponte reopening. That's part of the reason why sua sponte reopening exists. But he would make similar arguments about why the delay in disclosing these details is excusable. And the tolling on the regular reopening would be the time is tolled during the pendency of the petition for review in this court? That would be the argument. The argument would be that he presented these facts once he was able, despite his trauma, able to disclose them to the next tribunal to which he was directed in the administrative proceedings, which was this court. He then pressed his request to get this in front of the proper decision maker during the pendency in this court. And then if this court remands, it will then go back to that proper decision. So why isn't that an, I mean, why isn't a motion to reopen an adequate vehicle for getting this in front of the agency, and you don't need to remand? Yeah, so for two reasons. One is that in Melgar-Alas, the court didn't just remand with instructions for the BIA to consider whether it should take new evidence. It also stayed the petitioner's removal pending that decision by the BIA. And so in this case, this court could follow that example in Melgar-Alas and stay and continue the stay of removal during the pendency of that limited vehicle. But there's nothing to stay because, I mean, like the stay is just preventing his hypothetical future removal after his hypothetical future return, right? So that's sort of an odd thing to be asking us for at this point. It's true, but I took your Honor's question to be what's the difference between, you know, remanding and him going in. And the difference is if he's able to avail himself, excuse me, of the ICE policy directive and return to the United States to litigate his claim for relief, he will have the protection of the stay if this court remands and maintains the stay, just like it did in Melgar-Alas. If the court simply denies petition for review and my client has to go in for reopening and then follows that process, there's nothing to say that he can't be, you know, deported or removed again in the middle of that proceeding. So that's one reason. Second, the other reason why we think that remand is more appropriate and frankly more beneficial for the client is that we think he'll stand on stronger footing if this case is part of the same proceeding that it has always been. Again, he pressed the full account of his torture in the next tribunal to which he was directed, which is this court. If this court sends it back, it's all part of the same proceeding and the IJ will be considering it on that basis, as opposed to if my client walks in now on his own independently, now it's, you know, 19 months after the IJ issued his initial decision. We think that's a fundamentally different posture for the IJ to consider the question in. I do wanna say also, if this court remands, this court should also correct two legal errors in the immigration judge's reasoning because those legal errors are gonna come right back up in the event that the immigration judge does receive the full account of Mr. Rodriguez-Lara's torture. That first error, again, was the immigration judge acknowledging that there were two reasons why Mr. Rodriguez-Lara was fearing future harm. Because he had not applied for a military ID was one, and the second was because he was involved in an investigation in 2020 where he gave information to a patient at the hospital. But the immigration judge then immediately disregarded the refusal to get a military ID as protected ground. So you've, I think now twice, said that if we remand, we should correct those errors. Are you not advancing those as independent grounds for granting the petition? Not absent a remand, simply because we understand that my client faces an uphill battle on the question of whether his harm that he did suffer that's currently in the administrative record would rise to the level of persecution and torture. He needs the new evidence to be able to make a full case to be able to carry his burden across all of the requirements for withholding of removal and cat relief. And so simply correcting those errors is probably not going to get him very far. But if the court remands and gets the new evidence in, the new evidence itself also will not go very far without correcting these errors. Because even if my client can present his full account of the torture, if the immigration judge concludes that the torture was not inflicted upon a protected ground, then the quantum of the harm is not going to matter. So that's why we say what we really want is a remand here. He needs the new evidence to get in, but this court should also correct those errors. You want to save the rest of your time for rebuttal? Okay, thank you.  Please support. Genuinely on behalf of the respondent, the Attorney General of the United States. The court should deny petitioner's request for remand because there's no inherent authority for the court to grant remand simply because a petitioner would like a do-over. In this case, nothing inequitable happened during the asylum hearing. I'm sorry, during the interview with the asylum officer. During that interview, it was just petitioner, the asylum officer, and an interpreter by phone. That was his first and best opportunity to present his claim. Second, when he went before an immigration judge, he was sworn to tell his full story. He was given an opportunity to say if he had any opposition to what he told the asylum officer, and he, again, affirmed his story. And now, he would like the court to give him a relief of going back to the agency to say that he had a different claim based on his unsworn statement in his informal brief. I have never seen this happen before in any case. Although Petitioner's Council cites to Milgar Ellis, that was probably a case, sorry, where there was an unopposed motion by the government to remand. In such cases, yes, the court grants the remand motion. And here, again, I think it would be quite incredible to allow a petitioner to come to an appellate court and say, I would like another opportunity. With regard to the Second Circuit case, Petitioner's Council cites, when, as Judge Miller noted, it was judicially noticeable facts or information that the court accepted. And in that case, again, it was an unopposed remand motion. The government did not oppose remand in those cases. And you oppose remand here, why? Because Petitioner had an opportunity before an asylum officer and an immigration judge to tell his full story. He swore that he was telling the full story. He was asked if he was comfortable, if he understood the interpreter. Both times he said he was telling his full story. The fact that he can file a motion to reopen, which would be the best vehicle for him to get this forward, before the immigration judge, Petitioner has not done so. And the problem with not telling your full truth as soon as you come to the country, fleeing from your home country, is if you don't tell the asylum officer what happened to you, and you say a different story before the immigration judge, well, that is the basis of an adverse credibility determination. And so that is a huge hurdle for a petitioner that he has to overcome. With regard to the motion to reopen, it is untimely. He was supposed to file it within 90 days of the immigration judge's decision. Obviously, that passed over a year ago. And he does have an avenue of a sui sponte, a motion to reopen sui sponte. But again, that is a huge hurdle because he has to not only overcome the adverse credibility determination, I'm sorry, the factors that can go into an adverse credibility determination, but he has to show why his prior hearings, why he could not tell his full truth. And do you agree, your friend on the other side said that the time would be told while the petition for review was pending in this court. Do you agree with that? I do not agree with that. The time for the motion to reopen, which is in HUSC 1229 AC7 and C little i, that deals with the timing and it must be done 90 days after the immigration judge's decision. The immigration judge's decision was on April 9th of 2024. So 90 days after would be July 8th. So obviously that's passed and he did not file. And there's nothing that would prevent a petitioner from filing a motion to reopen at the same time a petition for review is pending. And another hurdle that he would have if he filed a motion to reopen was he would have to show that he had exercised due diligence during this whole time. Obviously when he filed his pro se motion, sorry, his pro se brief, he knew he did not make his full claims. If the court has no further questions on that. Can I ask you a question about the IJ's decision? So, and this goes to the question of Nexus. So the IJ said his fears are not based on any protected ground, but on his belief that the government seeks to harm him because of the information he previously provided. And in the preceding sentence, it says he was involved in this investigation at a hospital where he gave information to a patient. And so the impression you get from the IJ's view of it is that this was like a violation of Nicaraguan HIPAA or something. But when you read the full context of his account, it seems fairly clear that the giving of information was a form of political opposition to the regime because the information was about the violent suppression of this protest. And the not getting a military ID, which prompted an official to call him a traitor, seems sort of to have been of a piece with that as a form of political opposition. And so political opinion or imputed political opinion are obviously protected grounds. And the IJ just seems not to have appreciated that. So what's your response? Even if the immigration judge did not appreciate his full claim about political opinion, Mr. Rodriguez-Lora still must establish a reasonable possibility of persecution. And the immigration judge made a clear finding on that that Mr. Rodriguez-Lora did not. And even if he did have the- Because I want to, sorry to interrupt you there, but it wasn't clear to me that there was a finding of lack of possibility of future harm independent from the no-nexus finding. So what would you point me to to show that? Yes, Your Honor. First, I would point the court to the administrative record at two. The second line, the non-citizen has failed to establish a reasonable possibility of persecution if returned to Nicaragua. And also, as we know, according to this court's precedent and lots of other court decisions, Bartholomew and so forth, reasonable fear proceedings are very brief. The immigration judge does not go into a full explanation or a full hearing that we would for a normal removal hearing as to the claim and the decisions in the past. I don't know if you remember this, Your Honors, but it used to be the judge would have like three little lines to write something really short. And so that was sufficient process for reasonable fear hearings. And so here, that's what the immigration judge did. And that is independently dispositive of the reasonable possibility of persecution claim for withholding of removal. So the fact that Petitioner testified that he was never harmed, and he provided insufficient evidence that there was a good reason for him to fear future harm, where he testified he was never harmed, and the only fear that he had was some people verbally insulted him and he saw some people surveilling him. That is not sufficient under this court's definition of what persecution is. So that by itself is sufficient. That's sufficient to show that substantial evidence supports the immigration judge's reasonable fear finding with regard to persecution. And the PFR should also be denied with regard to Kat because the immigration judge substantial evidence supports the immigration judge's finding that Mr. Rodriguez-Lora did not establish a reasonable possibility of torture where there was no evidence of past torture. And there was no evidence that there was a good reason for him to fear the possibility of severe physical or mental pain or suffering. For those reasons, respondent asks that the petition for review be denied. And I thank the court for its time. If there are no more questions, the respondent rests on the brief submitted. Thank you, counsel. Thank you. Just a few points in rebuttal, your honors. The government's arguments against this court's inherent authority to remand are new. The government's arguments in its brief were simply the argument that the court couldn't consider extra record evidence. As we explained in our reply brief, those cases and those principles don't apply in this context where we are asking the court to remand without disturbing the merits. Of course, Mr. Rodriguez-Lora should have presented his facts, the full account of his facts. No one is disputing that, and we aren't. But sua sponte reopening and equitable tolling both exist for that reason. And so does this court's inherent authority. And it's a question for the immigration judge in the first instance whether to believe my client's account and whether to excuse his lateness in disclosing those facts. Those are questions for the IJ in the first instance. And as the government admits, sua sponte reopening is available, and we would also press that equitable tolling is available, or at least he can make those arguments before the IJ. In Malagara-Alas, it's true that the government was the one who moved to remand, but the government here doesn't explain where the source of authority is for that remand authority. We submit that it's the same inherent authority to remand that applies in every agency case and also applies in the immigration context. My client, again, pressed the full account of his torture to the first tribunal to which he was directed after his administrative proceedings, which was this court. The government repeats the argument that there was an independent legal basis in the immigration judge's withholding of removal analysis. That's wrong for the reasons that we explain in our reply brief. The language that my friend quotes that Mr. Rodriguez-Lara, quote, failed to establish reasonable possibility of persecution is the overarching standard for the overall requirement for withholding of removal. It does not make clear that there was a planning about the level of harm. We ask that the court remand. Thank you, counsel. I also want to thank Mr. Phillips and Joan State for doing this case pro bono. And thank you very much. And Rodriguez-Lara versus Bondi will be submitted.
judges: WARDLAW, IKUTA, MILLER